**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shirley Lorraine LATTIMORE, Defendant–Appellant.**

**No. 89–5168
Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

June 5, 1990.

Leon D. Watts, Federal Public Defender, Ft. Lauderdale, Fla., for defendant-appellant.

Marc Fagelson, U.S. Attorney's Office, Sonia Escobio O'Donnell, Linda Collins–Hertz, Ft. Lauderdale, Fla., for plaintiff-appellee.

Before FAY and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Shirley L. Lattimore, a former bank teller, appeals her conviction of eight counts of willful misapplication of bank funds under 18 U.S.C.A. § 657, raising three claims of error: *first,* the district court's admission of evidence that her husband paid off a delinquent loan around the time of the alleged misapplication; *second,* that the district court should have granted a mistrial after one of the Government's witnesses violated the rule of sequestration; and *third,* that the evidence was insufficient to convict her. We affirm.

### Admissibility of Loan Payment

■ The district court admitted the testimony of Dwayne Lee Stickler, manager of a loan business, that in July 1986, Ms. Lattimore's husband paid off a delinquent loan with a $1200 cash payment. Ms. Lattimore argues that this testimony was unduly prejudicial.

■ Where the charged crime involves pecuniary gain and the Government presents other evidence of the defendant's guilt, evidence of the sudden acquisition of money by the defendant or his or her spouse is admissible, even if the Government does not trace the source of this new wealth. *United States v. White,* 589 F.2d 1283, 1286 & n. 7 (5th Cir.1979) (citing *United States v. Manning,* 440 F.2d 1105, 1110 (5th Cir.), *cert. denied,* 404 U.S. 837, 92 S.Ct. 125, 30 L.Ed.2d 69 (1971)); *see also United States v. Vannerson,* 786 F.2d 221 (6th Cir.), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986); Annotation, *Evidence of Acquisition or Possession of Money, Source of Which Is Not Traced, as Admissible Against Defendant in Criminal Case,* 91 A.L.R.2d 1046 (1963 & Supp.1989). The Government introduced testimony that prior to the time that the funds here were misapplied, the Lattimores were in dire financial straits. Shirley Lattimore's neighbors and co-workers testified that prior to June and July of 1986 the Lattimores had gone without food and borrowed money to meet their mortgage. In these circumstances, her husband's payment of $1200 in cash on a delinquent loan was properly admissible as circumstantial evidence of Ms. Lattimore's involvement in a crime involving pecuniary gain.

### Violation of the Rule of Sequestration

■ As part of its rebuttal case, the Government called Carol Hauser, the branch manager of the bank, to testify about defendant's duties involving access to the cash drawers and terminals at the bank, and whether Ms. Hauser had ever observed anyone take over Ms. Lattimore's teller station or her duties as proof operator.

On cross-examination, Ms. Hauser admitted that she had spoken to Del Ray Strahm, the Government's chief witness, and two other Government witnesses, JoAnn Cash and Mary Benny. These conversations took place prior to Ms. Hauser's testimony but after the other witnesses had finished testifying for the Government. Mr. Strahm told Ms. Hauser that he had been asked about bank policies and procedures. Ms. Benny and Ms. Hauser discussed the substance of Ms. Benny's testimony. Ms. Hauser and Ms. Cash did not discuss the substance of the latter's testimony. Ms. Lattimore's counsel moved for a mistrial on the ground that the rule of sequestration, *see* Fed.R.Evid. 615, had been violated.

■ At the beginning of the trial, the district court had instructed counsel that he was invoking the rule of sequestration. Both the Government and the defendant agree that Ms. Hauser violated this rule by discussing the case with other Government witnesses. The law in this Circuit is settled, however, that "[t]he district court's denial of a mistrial for violation of the

sequestration rule is ... a matter of discretion, and reversible only on a showing of prejudice." *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir.1986) (citing *United States v. Womack*, 654 F.2d 1034 (5th Cir. Unit B 1981)).

■ A district court may treat a violation of the sequestration rule in one of three ways: *first*, it may cite the guilty party for contempt; *second*, it may allow opposing counsel to cross-examine the witnesses as to the nature of the violation; and *third*, where counsel or the witness violates the rule intentionally, the court may strike testimony already given or disallow further testimony. *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir.), *cert. denied*, 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). Ms. Lattimore's attorney fully cross-examined Ms. Hauser about the extent of her contacts with other witnesses, thereby giving the jury the opportunity to discount Ms. Hauser's credibility. Although the record reflects that both the district court and the Government were careless in instructing witnesses of the strictures of the rule, it does not support Ms. Lattimore's claim that the Government intentionally violated the rule. The district court also implicitly determined that Ms. Hauser did not tailor her testimony to fit or bolster that of the other witnesses, but rather testified from independent knowledge. Given the curative effect of the defense cross-examination, it was not an abuse of discretion for the district court to deny the motion for a mistrial. *See Jimenez*, 780 F.2d at 980–81.

### Sufficiency of the Evidence

Conceding that the Government proved that defendant was an employee of a federally insured bank and that the alleged actions injured and defrauded the bank, Ms. Lattimore contends that the Government did not prove that she was the one who committed the fraud. *See United States v. Payne*, 750 F.2d 844, 855 (11th Cir.1985) (listing elements of offense).

■ Viewed most favorably to the Government, the evidence was sufficient for a jury reasonably to conclude beyond a reasonable doubt that Ms. Lattimore misapplied the funds of Ambassador Savings and Loan Corporation on eight occasions.

Shirley Lattimore worked as a teller and proof operator at Ambassador in Tamarac, Florida from January to August 1986. In June and July of that year, eight checks were double-cashed at Ambassador. The Government sought to prove at trial that Ambassador's procedures made it impossible for anyone other than Ms. Lattimore to have cashed the checks the second time.

Briefly, these procedures were as follows. Each teller at Ambassador was assigned to a teller station for the duration of his or her shift. Each station contained a cash drawer and an electronic terminal which recorded every bank transaction as it occurred. The terminal was linked to the bank's central computer in Tampa. Once a teller in Tamarac entered information into the computer system, no one at the branch could alter that information.

Because each teller was responsible for the cash in his or her drawer, the bank's procedures were designed to ensure that only one teller at a time could use a particular station. For example, each teller had the key to his or her cash drawer; other tellers could only open that drawer with the assistance of the branch manager or the head tellers. Also, a teller beginning a shift signed on to the computer using a key and unique four-digit code or "teller number."

When a customer presented a check to Ambassador for deposit, the teller entered the amount of the check into his or her terminal, which then recorded the dollar amount of the check and the teller station number. At the end of the day, the computer in Tampa printed a "teller transaction journal" containing all the transactions broken down by teller station and identifying the teller. The teller transaction journal reached the Tamarac branch office the following day.

At the end of each day the tellers gave their work, including the checks they had received, to the proof operator. The proof operator tallied each teller's deposits,

aggregated these totals together, then compared this grand total to the total produced by the bank's computer. After verifying that the two were the same, the proof operator prepared a "cash letter" which itemized the day's deposits. The cash letter and the checks received that day were sent to Ambassador's correspondent bank, NCNB. In June and July of 1986, Ms. Lattimore was Ambassador's sole proof operator.

During those two months, eight checks were double-cashed at Ambassador. Each incident involved essentially the same chain of events. A check was deposited at the station of a teller other than Ms. Lattimore. The check would be missing from the cash letter sent to NCNB. The following day, the same check would be cashed at Ms. Lattimore's window. Both transactions were recorded on the teller transaction journal, although in some cases the teller tape produced by Ms. Lattimore's terminal was altered to omit the second transaction. Ms. Lattimore's time sheet showed that she was working at the bank when the checks were cashed at her window.

In addition to this evidence, the Government introduced testimony that Ms. Lattimore was suffering from extreme financial hardship prior to June 1986, but that her financial condition improved thereafter.

Thus, eight times checks submitted to Ambassador for payment were cashed again at Ms. Lattimore's station; she was working at the bank on each occasion; she had exclusive possession and control of her station; her poor financial condition improved shortly after the eight checks were cashed. Ms. Lattimore's position as proof operator gave her a unique opportunity to take the eight checks and cash them at her station later.

Ms. Lattimore argues on appeal that the Government did not sufficiently rule out the possibility that someone else had cashed the checks at her station. It is not necessary that the evidence exclude every reasonable hypothesis of innocence to support a conviction. *E.g., United States v. Sanchez,* 722 F.2d 1501, 1505 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). The Government put on substantial testimony that the bank's procedures precluded another teller from using Ms. Lattimore's station. The jury was entitled to credit the Government's witnesses.

As to whether she was suffering from financial difficulties, defendant presented testimony that her financial condition was stable prior to the alleged crimes. The credibility choice between her witnesses and the prosecution's was for the jury. *Sanchez,* 722 F.2d at 1506.

AFFIRMED.